Order, Supreme Court, New York County (Jeffrey K. Oing, J.), entered November 14, 2011, which denied defendant’s motion for summary judgment dismissing the complaint, and denied plaintiffs cross motion for summary judgment on its complaint seeking the difference between the amount defendant paid it on its property damage claim, i.e., the cost of replacement, and the selling price of the damaged property, affirmed, without costs.
The disputed stock inventory, consisting of lamps and lighting products, was damaged during a sprinkler system leak in plaintiffs South Carolina warehouse in 2008. The issue before us is whether this stock is to be valued at the selling price or replacement cost under the insurance policy defendant issued to plaintiff.
The policy provides for valuation at the selling price, rather than at the cost of replacement, of damaged “ '[s]tock’ you have manufactured” and of “component parts manufactured by others that will become a part of your finished product.” Although the term “manufacture” or “manufacturer” is not defined, the dissent opines that our decision in Bijan Designor For Men v Fireman's Fund Ins. Co. (264 AD2d 48 [1st Dept 2000], lv denied 96 NY2d 707 [2001]) is dispositive and that plaintiff may not be deemed to have manufactured the stock within the meaning of the policy because it was assembled by factories in China, which sold it to plaintiff. However, Bijan is distinguishable and the motion court correctly found that neither party demonstrated conclusively whether plaintiff can be deemed the manufacturer of the inventory.
Bijan, a retailer of high-fashion menswear, selected the materials, designed the clothing line and provided detailed specifications for its manufacture by Italian factories (264 AD2d at 50). While it may have been considered the manufacturer as that term was used in the fashion industry, we held that the reference in the insurance policy to “ ‘finished goods . . . manufactured by you,’ plainly contemplates the concept of manufacturing in its ordinarily understood sense, i.e., the fabrication of a final product through the use of raw materials” (id. at 52). Thus, we found that Bijan was not the manufacturer for the purposes of the policy because the actual physical production of the clothing was carried out by foreign factories, which *493 held title to the goods until Bijan received and accepted the finished product (id. at 54). However, unlike Bijan, which only visited the factories from time to time to provide oversight (id. at 50), here plaintiff asserts that it was intricately involved in the management and daily process of manufacturing at the factories in China, and that it is more than just the architect of the damaged stock.
Plaintiff is a member of the American Association of Lighting Manufacturers and the originator and owner of 54 active patents and 14 active trademarks concerning the design and manufacture of its products. Its consolidated financial statements identify it as a manufacturer, as does its website.
In 2008, plaintiff maintained an office in China, with a staff of approximately 27 employees, and expended almost $3 million for the daily employment of its own engineers, designers and “cad operators” who worked closely with 15 factories, one of which was allegedly co-owned by plaintiff. All products manufactured in China bore stamps with plaintiffs name, and plaintiff provided a lifetime warranty and performed the warranty repairs.
Plaintiff also alleges that it approved all sources of raw materials and selected the specific raw materials used in the manufacture and assembly of its products. It alleges that its designers were regularly present at each of the factories to oversee production runs to ensure that its design specifications were being followed, and that its manufacturing engineers and inspectors were present on a daily basis at each of the factories then in production to oversee fabrication and manufacturing operations, to perform spot inspections during each step of the manufacturing process, and to inspect and approve finished goods prior to shipment to its South Carolina warehouse. Most significantly, plaintiff alleges that, throughout the manufacturing process, it maintained ownership of the stock in production, and that the purchase orders were used by the parties as a means by which the stock entered the United States.
This active role in the fabrication of its product, including oversight and quality control procedures that permitted plaintiff to “stop production” in the Chinese factories, raises a material issue of fact as to whether plaintiff may be deemed a manufacturer of the disputed stock.
Accordingly, the respective summary judgment motions of the parties were correctly denied.
We have considered the parties’ remaining arguments and find them unavailing. Concur—Andrias, Saxe and Román, JJ.